UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAIN LAYOLA CORDERO (A-245-882-107),<br><br>        Petitioner,<br><br>        v.<br><br>WARDEN, GOLDEN STATE ANNEX DETENTION FACILITY, et al.,<br><br>        Respondents. | No. 1:26-cv-2341 DC CSK<br><br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Petitioner Alain Layola Cordero (A-245-882-107), a 23 year-old native and citizen of Cuba who is proceeding without counsel, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  On March 7, 2024, petitioner entered the United States, was initially detained by immigration officials inside the United States, and petitioner was released on his own recognizance.  On January 26, 2026, petitioner was arrested and re-detained by U.S. Immigration and Customs Enforcement ("ICE"), and has been in continuous detention since this date.  This habeas action concerns petitioner's re-detention.  For the reasons that follow, the Court recommends denying respondents' motion to dismiss, granting the petition for a writ of habeas corpus and ordering petitioner's immediate release.

---

[1]  This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

## I.   FACTUAL BACKGROUND

Petitioner is a native and citizen of Cuba.  (ECF No. 9-1 at 10 (Notice to Appear).)  On or around March 7, 2024, petitioner arrived in the United States near San Luis, Arizona.  (Id.)  Petitioner was detained then released by immigration authorities on his own recognizance expressly pursuant to 8 U.S.C. § 1226, Immigration and Nationality Act ("INA") Section 236.  (Id. at 13.)  On March 7, 2024, petitioner was issued a Notice to Appear in 8 U.S.C. § 1229a, INA Section 240, removal proceedings, which are standard removal proceedings.[2]  (Id. at 10.)  Petitioner states he has an open application for asylum with the immigration court.  (ECF No. 1 at 5.)

On January 25, 2026, a Florida police officer stopped petitioner while he was riding a 9cc motor bike and detained petitioner for 48 hours, at which point ICE officers arrested and detained petitioner at the Palm Beach County Jail in West Palm Beach, Florida.  (ECF Nos. 1 at 5; 9-1 at 5.)  Other than this traffic stop, petitioner has no "priors," and has "never had any run-ins with law enforcement."  (ECF No. 1 at 6.)  Respondents do not contend that petitioner is a danger or a flight risk, or subject to mandatory detention pursuant to 8 U.S.C. § 1226(c) for any criminal offenses, or that he violated any conditions of his release.[3]  (See ECF Nos. 6, 9.)

Petitioner was not provided a reason for his detention, or a pre-deprivation hearing.  (See ECF No. 1 at 5; ECF No. 9-1.)  Respondents do not assert otherwise.  (See ECF Nos. 6, 9.)  Petitioner has been in continuous detention since January 25, 2026, beginning in West Palm Beach, Florida, and now at the Golden State Annex in California.  (Id. at 2, 5.)

## II.   PROCEDURAL BACKGROUND

On March 26, 2026, petitioner filed his petition for writ of habeas corpus pro se and motion for appointment of counsel.  (ECF Nos. 1, 2.)  On March 30, 2026, this Court issued a

---

[2]  Removal proceedings pursuant to 8 U.S.C. § 1229a (INA § 240) are standard removal proceedings, which are different from expedited removal proceedings pursuant to 8 U.S.C. § 1225(b)(1) (INA § 235(b)(1)).

[3]  Though the Form I-213 claims petitioner has a "previous history of arrest, please see NCIC for details," no NCIC was provided and the only law enforcement encounter described is the January 2026 traffic stop; nor do respondents contend that petitioner has a criminal history.  (See ECF Nos. 6, 9; ECF No. 9-1 at 2-3.)

screening and scheduling order, noting that it was deferring ruling on petitioner's motion for appointment of counsel until after reviewing respondents' response to the petition.  (ECF No. 5.)  On April 2, 2026, respondents filed a motion to dismiss.  (ECF No. 6.)  Petitioner did not file a response to the motion to dismiss.  See Docket.  On April 20, 2026, because the record, which included the government's response, did not contain sufficient information to determine the issues presented, this Court ordered respondents to submit pertinent documents relating to petitioner's habeas claims, and the parties were permitted to file supplemental briefing in relation thereto.  (ECF No. 8.)  On April 20, 2026, respondents filed a supplemental response, and provided pertinent documents.  (ECF Nos. 9, 9-1.)  Petitioner was permitted to file his reply by May 4, 2026, but no reply was filed.  Briefing is now complete.

**III.    LEGAL STANDARD**

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

**IV.    DISCUSSION**

Generally, noncitizens are subject to civil immigration detention only if the noncitizen presents a risk of flight or danger to the community.  See Zadvydas, 533 U.S. at 690 (holding that 8 U.S.C. § 1231(a)(6) does not authorize indefinite detention).  Because petitioner is proceeding pro se and pro se pleadings are liberally construed, the Court construes petitioner's claim as a Fifth Amendment due process claim challenging his re-detention, and not as a claim challenging

3

his detention as prolonged.  (See ECF No. 1 at 16-17.)  Respondents do not argue that petitioner is a flight risk or a danger to the community and instead argue that as an "applicant for admission," petitioner's detention is mandatory under 8 U.S.C. § 1225(b)(2) and he is ineligible for a bond hearing.  (ECF No. 6 at 1-2.)  Respondents also argue that petitioner's mandatory detention is constitutional because it is not indefinite and will end once a final order of removal is entered, and his less than three month detention is not prolonged.  (Id. at 2.)  Nevertheless, if the Court orders a bond hearing, respondents contend that the government should not be required to bear the burden of proving petitioner is a flight risk or danger to the community.  (Id. at 4.)

**A.      Respondents' New Supplemental Argument**

In their supplemental response, respondents raise a new argument not raised in their initial response to the petition (their motion to dismiss)—that petitioner failed to meet his burden of proof by failing to plead sufficient facts in the petition.  (See ECF No. 9.)  This argument is not well taken.  Respondents offer no explanation or justification for raising this new argument in their supplemental response that should have been raised in their motion to dismiss filed almost three weeks earlier.  (See id.; ECF No. 6.)

The Court also rejects respondents' attempt to use the Court's April 20, 2026 order as support for their new argument.  (See ECF No. 9 at 1.)  On April 20, 2026, because the record, which included the government's response to the petition, did not contain sufficient information to determine the issues presented, this Court ordered respondents to submit pertinent documents relating to petitioner's habeas claims, and the parties were permitted to file supplemental briefing in relation thereto.  (ECF No. 8.)  Though the government knew that the petitioner, who filed his habeas petition pro se and requested appointment of counsel, was previously detained by immigration authorities in March 2024 and was ordered released by immigration authorities on petitioner's own recognizance expressly pursuant to 8 U.S.C. § 1226 in March 2024 (see ECF No. 9-1 at 13), counsel for the government failed to disclose this information in its response to the petition (see ECF No. 6).  This was not disclosed despite knowing, from the thousands of habeas cases that have been filed in this district alone, that this information is relevant and critical to the court's analysis of a habeas petition that challenges the lawfulness of petitioner's detention.  The

4

Court notes that in many similar cases, the government has acknowledged the petitioner's prior release by immigration authorities, as it must.  It is unclear why the government failed to do so here in its initial response, failed to do so in its supplemental response, and instead, continued to ignore the issue in its supplemental response while raising a new argument it should have raised in its initial response to the petition.

The Court rejects respondents' new argument raised for the first time in their supplemental response, and proceeds to the merits.  The pro se petition provided sufficient factual allegations to meet petitioner's burden of proof.  Just as respondents are required to provide court transcripts and other documentary evidence in habeas proceedings under 2254, this Court requires respondents to provide pertinent immigration documents when necessary.  See Rule 5, 28 U.S.C. foll. § 2254.

**B.        Applicability of Section 1225 or Section 1226**

This Court must first decide whether petitioner, who has lived in the United States since March 2024, is subject to discretionary release as first ordered by immigration officials under § 1226(a), or whether petitioner is now subject to mandatory detention under § 1225(b)(2)(A), as respondents argue.  8 U.S.C. § 1225(b)(2) mandates detention during removal proceedings for applicants "seeking admission" and does not provide for a bond hearing.  8 U.S.C. § 1226(a) "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal."  Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022).  Under § 1226(a), the government makes an initial custody determination, and the noncitizen will be released upon a showing "to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding."  Rodriguez Diaz, 53 F.4th at 1196 (citing 8 C.F.R. § 236.1(c)(8)).  Section 1226(a) provides "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change."  Id. at 1202.  Therefore, "[i]f the noncitizen is detained under section 1226(a), she is entitled to a bond hearing."  Labrador-Prato v. Noem, 2025 WL 3458802, at *3 (E.D. Cal. Dec. 2, 2025) (citing Jennings v. Rodriguez, 583 U.S. 281,

306 (2018)).  Respondents contend § 1225(b)(2)(A) applies because petitioner is an "applicant for admission" and therefore subject to mandatory detention.  (ECF No. 6 at 2.)

The Court concludes that § 1226(a) applies to petitioner.  First, it is undisputed that immigration authorities released petitioner on his own recognizance pursuant to 8 U.S.C. § 1226 on March 7, 2024.  (ECF No. 9-1 at 13.)

Second, this Court agrees with and joins the majority of courts nationwide, including the Eastern District of California, in rejecting respondent's new interpretation[4] of Sections 1225 and 1226.  See Rodriguez Vazquez v. Bostock, 2025 WL 2782499, at *1, 21-22 (W.D. Wash. Sept. 30, 2025) (concluding, after a thorough analysis, that "the government's [interpretation of § 1225] belies the statutory text of the [Immigration and Nationality Act], canons of statutory interpretation, legislative history, and longstanding agency practice"); J.Y.L.C. v. Bostock, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025) (collecting cases rejecting the government's assertion that § 1225 empowers DHS to arrest and hold a noncitizen present without legal status who has spent years in the U.S.); Cardona-Lozano v Noem, 2025 WL 3218244, at *6 (W.D. Tex. Nov. 14, 2025) ("Repeatedly, [district courts across the country] have found that DHS and the [Board of Immigration Appeals']  construction of the [Immigration and Nationality Act] is incorrect and that petitioners who have long resided in the United States but are being held under § 1225 are entitled to relief.") (collecting cases)); Faizyan v. Casey, 2025 WL 3208844, at *5 (S.D. Cal. Nov. 17, 2025) (holding that § 1226 applies to a petitioner who "DHS has consistently treated" as subject to discretionary detention and "who has been residing in the United States for two years" (internal quotation marks and citation omitted)); Josue I.C.A. v. Lyons, 2025 WL 3496432, at 3 n.6 (E.D. Cal. Dec. 5, 2025) (collecting cases); Morales-Flores v. Lyons, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (collecting cases) ("Courts nationwide, including this one, have overwhelmingly rejected respondents' arguments and found DHS's new policy unlawful.").

"These courts examined the text, structure, agency application, and legislative history of

---

[4]  Until DHS changed its policy in July 2025, the Government consistently applied Section 1226(a), not Section 1225(b)(2), to noncitizens residing in the United States who were detained by immigration authorities and subject to removal.  See Rodriguez Diaz, 53 F.4th at 1196.

6

1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [petitioner], living in the interior of the country." Salcedo Aceros v. Kaiser, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases). By contrast, "[t]he government's proposed reading of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." Guerro Lepe v. Andrews, 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases). This Court incorporates and adopts the thorough and persuasive reasoning of the district court in Lepe, 2025 WL 2716910, at *3-9.

Though respondents did not address recent outside circuit cases, the Court briefly addresses those cases. This Court does not find Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026) or Avila v. Bondi, No. 25-3741, 2026 WL 819258 (8th Cir. Mar. 25, 2026) to be persuasive, and instead finds the analysis in Castañon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1060-62 (7th Cir. 2025), and Barbosa da Cunha v. Freden, No. 25-3141, 2026 WL 1146044 (2d Cir. Apr. 28, 2026), to be more persuasive. See also Gurvinder Singh v. Chestnut, 2026 WL 413839 (E.D. Cal. Feb. 14, 2026); Singh v. Baltazar, 2026 WL 352870, at *3-6 (D. Colo. Feb. 9, 2026) (rejecting the Buenrostro majority in its interpretation of § 1225 as nonbinding and highlighting the Seventh Circuit Court of Appeals' disagreement with the Buenrostro majority) (citing Castanon-Nava, 161 F.4th at 1052); Tomas Nicolas v. Warden, 2026 WL 364399, at *3 n.3 (S.D. Ind. Feb. 10, 2026) (disagreeing with Buenrostro majority and declining to follow); Chachipanta Cando v. Bondi, 2026 WL 357551, at *5 n.6 (D. Neb. Feb. 9, 2026) (same); Aroca v. Mason, 2026 WL 357872, at *15 n.40 (S.D. W.Va. Feb. 9, 2026) (same). As the Second Circuit explained in Barbosa da Cunha:

> Today, although we part ways with two other circuits that have addressed this question, we join the overwhelming majority of federal judges across the Nation to consider it and conclude that the government's novel interpretation of the immigration statutes defies their plain text. That text makes clear that Section 1226(a) governs detention of noncitizens like Petitioner. Section 1225(b)(2)(A) does not apply to such noncitizens, who are present in the United States after entering the country without inspection and admission, and who were not apprehended while entering the country or shortly

7

thereafter.

> This result is dictated by the plain text of these provisions, and further confirmed by the statute's context, structure, history, and purpose. It likewise comports with the Supreme Court's established understanding of Sections 1225 and 1226. It reflects Executive Branch practice over thirty years and across five Presidential administrations. Moreover, it explains why Congress has never challenged that settled practice despite making numerous amendments to the immigration laws.

Barbosa da Cunha, 2026 WL 1146044 at *2.  In any event, neither Buenrostro-Mendez nor Avila are binding on this Court.

Following the majority of courts, this Court also rejects the government's new interpretation of 8 U.S.C. § 1225(b)(2)(A) and their contention that petitioner is an "applicant for admission" subject to § 1225(b)(2).  This Court finds that petitioner is detained under 8 U.S.C. § 1226(a) and its implementing regulations because petitioner was expressly released on his own recognizance pursuant to § 1226, he has resided in this country for over 1.5 years, and petitioner's January 2026 arrest and re-detention were not upon his arrival to the United States.  "Federal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at the outset of detention."  Jennings, 583 U.S. at 306 (citing 8 CFR §§ 236.1(d)(1)).  As such, petitioner should have been provided a bond hearing before his re-detention.

### C.    Due Process Claim

Liberally construed, petitioner argues he has a fundamental liberty interest in freedom from imprisonment pursuant to the Fifth Amendment and has a liberty interest in not being incarcerated after prior release without a pre-custodial hearing.  (ECF No. 1 at 16.)  Respondents argue petitioner's constitutional claim fails because petitioner's less than three month detention is not prolonged.  (ECF Nos. 6 at 2; 9 at 1-2.)  Respondents' arguments do not demonstrate the government has satisfied the requirements of the Due Process Clause, "which of course constitute[s] the supreme law of the land[.]"  Tot v. United States, 319 U.S. 463, 472 (1943) (Black, J., concurring).

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law.  U.S. Const. amend. V.  "It is clear that

commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Foucha v. Louisiana, 504 U.S. 71, 80 (1992). "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. "The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary." Tinoco v. Noem, 2025 WL 3567862, at *5 (E.D. Cal. Dec. 14, 2025) (citing Zadvydas, 533 U.S. at 690).

The Court analyzes petitioner's due process claim "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)). The Supreme Court has found that a protected liberty interest may arise from a conditional release from physical restraint. Young v. Harper, 520 U.S. 143, 147-49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. See id. (finding due process requires pre-deprivation hearing before revocation of preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring,

9

his "condition is very different from that of confinement in a prison." Id. "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." Id. at 481-84.

Here, petitioner's initial detention and subsequent release in March 2024 are similar because it allowed petitioner to live in the United States, subject to immigration supervision, but free of custody for over 1.5 years. Such time allowed petitioner to form "enduring attachments of normal life." Morrissey, 408 U.S. at 482. This Court finds that petitioner's original release and time out of custody gave rise to a constitutionally protected liberty interest.

Petitioner's release was premised upon a finding that, at the time of petitioner's release, he was not dangerous nor a flight risk. See 8 C.F.R. § 1236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in [8 U.S.C. § 1226](c)(1), under the conditions at section [8 U.S.C. § 1226](a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."); Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018); F.M.V. v. Wofford, 2025 WL 3083934, at *1 (E.D. Cal. Nov. 4, 2025). In light of all of the foregoing, the Court finds that petitioner's prior release created a reasonable expectation that he would be entitled to retain his liberty as long as he was not a flight risk and did not pose a danger to the community. See Perry v. Sindermann, 408 U.S. 593, 601-03 (1972) (finding reliance on governmental representations may establish a legitimate claim of entitlement to a constitutionally-protected interest); F.M.V., 2025 WL 3083934 at *4-5; Guillermo M. R. v. Kaiser, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is inherent in the Due Process Clause"); Ortega v. Kaiser, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest).

Next, the Court turns to what procedures are necessary to ensure that the deprivation of that protected liberty interest meets the demands of the Constitution.  The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings."  Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022); see also Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context).  In applying the Mathews test to a procedural due process claim challenging immigration detention, the Ninth Circuit explained that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context."  Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted).  Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest.  Mathews, 424 U.S. at 335.

First, petitioner has a clear interest in remaining free from detention.  "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects."  Zadvydas, 533 U.S. at 690 (citing Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process.").  For over 1.5 years, petitioner was free from custody before his re-detention.  The duration of his conditional release elevates and underscores his interest in liberty.  See Pinchi v. Noem, 2025 WL 2084921, at *3 (N.D. Cal. July 25, 2025) (in the past five years, petitioner developed "extensive relations of support and interdependence" that "underscore the high stakes of [his] liberty.");  Ortega v. Bonnar, 415 F. Supp. 3d 963, 963 (N.D. Cal. 2019) (holding that petitioner had a substantial liberty interest where he had been released from custody for 18 months and was living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community).

The second Mathews factor also weighs in petitioner's favor.  "The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing."  See A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16,

11

2025).  Again, civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community.  See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023).  Respondents do not contend that petitioner is or was a flight risk or a danger to the community.  (See generally ECF Nos. 6, 9.)  In addition, respondents do not contend that petitioner has a criminal record.  (Id.)  Here, petitioner has been detained since January 25, 2026, without being given an individualized bond hearing to evaluate whether petitioner is a flight risk or a danger to the community.  No neutral arbiter has determined whether petitioner is a flight risk or a danger to the community.

As to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws, but respondents' interest in detaining petitioner without a hearing is "low."  Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025).  Detention hearings in immigration courts are routine, and impose a "minimal cost."  Doe, 787 F. Supp. 3d at 1094.  In addition, here, the government's interest is even lower because petitioner was previously released on his own recognizance after immigration officials determined he was not a flight risk or danger to the community, he lived in the country for over 1.5 years on release without incident, and he has no criminal record.  See Pinchi, 2025 WL 1853763, at *2.

Overall, balancing these factors, the Court finds that the Mathews factors weigh in favor of finding petitioner is entitled to a bond hearing, and petitioner should have been provided such a hearing before he was detained.  "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case."  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added).  In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are also entitled to due process, including a predeprivation hearing before their parole can be revoked.  Morrissey, 408 U.S. at 480-86.  "Numerous district courts have held that these principles extend to the context of immigration

12

detention." F.M.V., 2025 WL 3083934 at *6 (collecting cases). Respondents point to no reasons a pre-deprivation hearing could not be held, and provided no evidence of "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process." Guillermo M. R. v. Kaiser, 791 F. Supp. 3d at 1036. Accordingly, the Court finds that petitioner is entitled to relief on his due process claim.

## V.    RESPONDENTS' MOTON TO DISMISS

For the reasons discussed above, respondents' motion to dismiss should be denied.

## VI.    PETITIONER'S MOTION FOR APPOINTMENT OF COUNSEL

Petitioner filed a motion for appointment of counsel. (ECF No. 2.) There currently exists no absolute right to appointment of counsel in habeas proceedings. See Nevius v. Sumner, 105 F.3d 453, 460 (9th Cir. 1996). Under 18 U.S.C. § 3006A, the court can appoint counsel at any stage of the case "if the interests of justice so require." See Rule 8(c), Fed. R. Governing § 2254 Cases. Because the Court recommends that the petition be granted, petitioner's motion for appointment of counsel is denied.

## VII.    CONCLUSION

In summary, the Court recommends that the petition for writ of habeas corpus be granted on petitioner's due process claim challenging his re-detention.

Accordingly, IT IS HEREBY ORDERED that petitioner's motion for appointment of counsel (ECF No. 2) is denied.

Further, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED.

2. Respondents' motion to dismiss (ECF No. 6) be denied.

3. Respondents be ordered to IMMEDIATELY release petitioner Alain Layola Cordero (A-245-882-107), and be ordered to provide petitioner with a copy of the release order at or near the time of release. If respondents have custody of petitioner's documents (e.g., identification, passport, work permit, Social Security card, etc.), respondents shall return those to petitioner at the time of release. Respondents be ENJOINED AND RESTRAINED from re-detaining petitioner unless the government

demonstrates, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that his physical custody is legally justified.

4. This injunction does not address other circumstances where detention authority is established under different authority than what is presented in this case (e.g., 8 U.S.C. § 1226(c) or 8 U.S.C. § 1231).

5. Given petitioner's pro se status, respondents be directed to file, within **seven days** of the adoption of these findings and recommendations, a status report addressing petitioner's status.

6. The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within **seven** days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: May 6, 2026

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

/1/cord2341.157.2241.imm.RELEASE

14